## JOHN ANDERSON *v.* J. G. DOLL.

INTERLINEATION IN WRITTEN CONTRACT.—If the owner of a horse delivers him to another party in pledge to secure the payment of a debt, and the parties contract in writing that the pledgee may keep the horse one year, paying for his use a stipulated sum, and may further keep him a second year upon the same terms, by giving proper notice of his election to do so, and the copy of the contract kept by the pledgee is interlined the next day by consent of parties so as to allow the pledgee to keep the horse two years more, instead of one, and the owner afterwards sells the horse and contract to a third party, and the pledgee gives notice of his election to keep the horse one year more, and at the end of that time accepts from the purchaser the money due from the pledgee, these circumstances are evidence that the pledgee regarded the original contract as binding.

LICENSE TO DO BUSINESS NOT A TAX.—A license paid to keep a stallion is not a tax upon his assessed value.

APPEAL from the District Court, Second Judicial District, Tehama County.

Plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant.

The findings of the Court below show that the contract was executed in duplicate the day it bears date, and that on the subsequent day the alterations were made in the presence of Welsh, and with his consent, and for the express purpose of extending the time to three years.

Courts, in the construction of written contracts, always

endeavor to give effect to the intention of parties, provided they can do so without violating any rule of law.

"A material alteration in a note or bill, made by the consent of all parties, is valid and binding.   *   *   *   Consent may be subsequent, as well as prior to the alteration, since the parties must be as competent to alter their contract after it was made as originally to make it."

The law of the alteration of other instruments is the same as that of negotiable paper. (2 Parsons, 581.)

While it might be true that Welsh, the vendor of Anderson, would be responsible to him for selling and assigning a paper that was not what it purported to be, it is extremely difficult to see what Doll had to do with the transaction, or how Doll is estopped from claiming his just rights under his contract by any transaction that might have occurred between Anderson and Welsh. It is not pretended that Doll was asked by what terms he held the horse, and that he made false representations on which Anderson acted to his injury. Nor is it possible to bring plaintiff's case within any definition of an estoppel. (*Boggs* v. *Merced Mining Co.*, 14 Cal. 279 ; *Davis* v. *Davis*, 26 Cal. 23.)

*Townsend & Combs,* for Respondent.

By the terms of the contract only the "taxes upon the horse" were to be refunded by Welsh, not the taxes upon the *use* of the horse in a particular manner, to wit: for *public hire.*

The Court finds that "before the commencement of the standing season of 1863, defendant, in accordance with the contract, *gave notice* that he elected to keep the horse *during that season.*" This furnishes the strongest *inference* from the defendant's *own act* that he *knew* that his right of election was only for *one* year after the first, and not for *two*, as he afterwards set up in his answer.

By the Court, CURREY, J.

This is an action of replevin for a thoroughbred stallion called "Rifleman," valued in the complaint at six thousand dollars. It appears from the record that on the 18th of February, 1862, one Welsh, then the owner of the horse Rifleman, borrowed of the defendant one thousand dollars, for which he gave him his promissory note, bearing interest at the rate of one and one half per cent per month. To secure the payment of the sum so borrowed, Welsh delivered the horse in pledge to the defendant. The defendant, wishing to use the horse, agreed to pay Welsh one thousand dollars for the use of the horse one year, and it was further agreed between the contracting parties that the defendant should have the privilege of keeping the horse another year, upon the same terms, upon giving proper notice of his election to do so ; in which event the note mentioned was not to become due until the lapse of the extended term. The defendant was to pay the expenses of keeping the horse, and also the taxes upon his assessed value. The taxes so paid were to be refunded with interest by Welsh to the defendant at the expiration of the term.

On the sixth of September, 1862, Welsh sold the horse to the plaintiff, and at the same time assigned to him the contract entered into between himself and the defendant. Early in the year 1863 defendant gave notice, in accordance with the terms of the contract, of his election to keep the horse the second year. Immediately after the second year had expired the plaintiff demanded of the defendant the horse, and at the same time tendered him the amount due on the note due him from Welsh, and also the sum due for the taxes on the assessed value of the horse for State and county purposes for the years 1862 and 1863, and the interest thereon at the rate stipulated. The sums so tendered the defendant accepted, but refused to surrender the horse. The plaintiff then brought this action. In defense the defendant alleged that by the contract he was entitled to have and hold the horse for three years, and also that

77

the county license tax for the years 1862 and 1863 for keeping the stallion for hire was not paid him.

The Court found that by the original contract the defendant had the right by his election to extend the term of holding the horse in his possession for one year in addition to the first year stipulated, so that by its terms the whole period would expire in the spring of 1864. It was also found that the copy of the contract offered in evidence by the defendant was interlined so as to give him the right to elect to keep the horse two years instead of one, additional to the first year; and that it was in evidence that the interlineation was made by the defendant in the presence of Welsh and with his consent on the day after the original contract was executed, but that there was no evidence that the plaintiff had notice of the change so made in the defendant's copy or counterpart of the contract as first executed.

If it were admitted that the change made by the interlineation referred to, could have operated to give the defendant the right to elect to keep the horse two years in addition to the first year, instead of one only, even as against the plaintiff who purchased the animal without notice of the change, still it does not appear that he made such election, but on the contrary it is found by the Court that the defendant did elect in terms to retain the possession and use of the horse for the second year only; besides which it is also found that the defendant accepted the money on the note for one thousand dollars, and also the taxes on the assessed value of the horse with the interest thereon as due. These several circumstances are to our minds strong evidence that the defendant regarded the original contract as the one of binding validity. If the original contract was not subsisting and binding at the time he gave notice of his election to keep the horse the second year, then he was not entitled to have and hold him under such notice.

The defendant further controverted the plaintiff's right to recover, on the ground that the county license tax for the years 1862 and 1863 were not paid him. This objection we think

not well founded. The amount paid for a license to do a particular kind of business could not be charged to the owner of the horse under the terms of the contract to refund the amount paid for taxes on the horse.

We are satisfied the Court below came to a correct conclusion as to the rights of the parties upon the facts found, and that the judgment should be affirmed.

Judgment affirmed.

Neither Mr. Chief Justice SANDERSON nor Mr. Justice SAWYER expressed any opinion.